IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

_____

NICHOLAS DOUGLAS; TASHEKA
BRYAN; JUNIOR HARRIS;
MARCUS RICHARDS;
STEPHANEY SMITH; and those
similarly situated,

        Plaintiffs,

    -vs-                        Civil Docket
                               No. 18-62-BU-SEH

YELLOWSTONE CLUB
OPERATIONS, LLC; and
HOSPITALITY STAFFING
SOLUTIONS, LLC,

        Defendants.

_____

TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE PROCEEDINGS

Heard in Judge Haddon's Chambers
Paul G. Hatfield United States Courthouse
901 Front Street
Helena, Montana
September 3, 2020
2:08 p.m.


BEFORE THE HONORABLE SAM E. HADDON

UNITED STATES DISTRICT JUDGE



TINA C. BRILZ, RPR, FCRR
Freelance Court Reporter
BRILZ COURT REPORTING, INC.
4956 Smallwood Court
Helena, Montana  59601

Proceedings recorded by mechanical stenography, transcript
produced by computer.

### A P P E A R A N C E S :


PRESENT ON BEHALF OF THE PLAINTIFFS, NICHOLAS DOUGLAS;
TASHEKA BRYAN; JUNIOR HARRIS; MARCUS RICHARDS; STEPHANEY
SMITH; and those similarly situated:

        MR. DAVID H. SELIGMAN
        Attorney at Law
        TOWARDS JUSTICE
        1410 High Street, Suite 300
        Denver, Colorado  80218
        (Appearing via telephone)

           and

        MS. MARY JO LOWREY
        Attorney at Law
        LOWREY PARADY LEBSACK, LLC
        1490 Lafayette Street, Suite 304
        Denver, Colorado  80218
        (Appearing via telephone)

           and

        MR. CHRISTOPHER C. YOUNG
        Attorney at Law
        YOUNG LAW OFFICE, PLLC
        P.O. Box 10247
        Bozeman, Montana  59719
        (Appearing via telephone)


PRESENT ON BEHALF OF THE DEFENDANT, YELLOWSTONE CLUB
OPERATIONS, LLC:

        MR. JEFFREY M. ROTH
        Attorney at Law
        CROWLEY FLECK PLLP - MISSOULA
        305 South 4th Street East, Suite 100
        P.O. Box 7099
        Missoula, Montana  59807
        (Appearing via telephone)

APPEARANCES CONTINUED:


PRESENT ON BEHALF OF THE DEFENDANT, HOSPITALITY
STAFFING SOLUTIONS, LLC:

      MS. LAUREN H. ZELDIN and
      MR. ROGER G. TRIM
      Attorneys at Law
      OGLETREE DEAKINS NASH
        SMOAK & STEWART, P.C. - DENVER
      2000 South Colorado Boulevard
      Tower Three, Suite 900
      Denver, Colorado  80222
      (Appearing via telephone)

1  The following proceedings were had:

2

3          THE COURT:  Good afternoon, counsel.

4          (Several said "good afternoon.")

5          THE COURT:  Counsel, I have a list that suggests we

6  have Ms. Lowrey, Mr. Christopher Young, Mr. David Seligman, and

7  Mr. Alexander Hood, Mr. Jeffrey Roth, and there are more;

8  Mr. Roger Trim and Ms. Lauren Zeldin.

9      Am I correct in those are the participants?

10          MALE VOICE:  That's correct, Your Honor.

11          THE COURT:  All right.

12      And I understand, Mr. Seligman, Mr. Roth, and Ms. Zeldin

13  will have the speaking roles.  Again, am I correct?

14          MS. ZELDIN:  Yes, Your Honor.

15          THE COURT:  Then I will ask, counsel, if you are one

16  of those who intends to speak, that when you commence a

17  separate statement, that you identify yourself for the record

18  so that Ms. Brilz, our reporter, will be able to know with

19  certainty who is speaking.  All right?

20      Well, counsel, I asked for this conference, and I did so,

21  because it appeared to the court to be appropriate and

22  necessary as a result of a number of recent filings that have

23  occurred in this particular case.

24      The order that sets the conference is Docket Number 65.

25  It was filed on August 31.

1          Prior to that filing, on February 4, the court issued an

2     order that required certain submissions to be made to the court

3     concerning factual matters and history matters in the case.

4          And that was, with some extensions, responded to with

5     Docket Number 63, which was filed on August 24, characterized

6     by title as an "Unopposed Motion For Preliminary Approval of

7     Class Action Settlement" and other statements.

8          That was accompanied by a brief, which was Docket Number

9     64.  The court reviewed those filings, and issued its order,

10    Docket Number 66, which gave notice to everyone that the court

11    would not consider the filings that had been made, presumably

12    in response to the court's orders.  In fact, did not comply

13    with the court's order.  And I denied the motion for that

14    reason.  Gave to the plaintiff an opportunity to resubmit the

15    motion upon conditions that were outlined in the order.

16         The next development of significance, was on September 2,

17    Docket Number 68, I think.  And was entitled:  "Supplemental

18    Brief in Support of an Unopposed Motion to Settle," et cetera,

19    et cetera.

20         We have a response ordered to be filed by the defendants

21    to this document, Number 66.  That response is due to be filed

22    by September 18.  And that's not yet been filed, so we don't

23    have the benefit of whatever it may say.

24         We do have the materials that were filed yesterday, Docket

25    Number 68.

1    We have undertaken as time has permitted, a review of
2  those materials.  They are, of course, similar to prior
3  materials.  They are voluminous in their content with the
4  statistical data and other calculations compiled, I think,
5  primarily by a statistician.

6    But our review within the time that's been available has
7  allowed us to make some determinations about what were
8  considered by the court to be deficiencies in prior filings.

9    We have -- for example, we've been able to determine that
10 the wages that are said to have been received by the four
11 categories of workers that fall within what was said to be the
12 asserted class, that's both regular and overtime hours that
13 wages that were received.

14    We have within those terms what the plaintiff asserts to
15 be a so-called should-have-been-paid rate for wages for each of
16 these four categories of employees, the bartenders, servers,
17 cooks, and -- what was the fourth -- bartenders --
18 housekeepers.

19    And we do not have among those materials that have been
20 provided to date, the total number of dollars that were not
21 sent to the employees in the form of paychecks.  But were, in
22 fact, remitted to someone as service charges or amounts above
23 the actual wages paid out to the employees in net wages.  So we
24 don't have that.

25    I think those numbers, or those amounts are characterized

1  variously in the papers as service charges.  That's a label

2  that's applied on occasion.

3      I also see in the papers that have been filed what are

4  characterized as bonuses paid.  I'm not sure if those are the

5  -- intended to be the same numbers, or whether they are some

6  sort of different calculation.  But we have different titles

7  applied to amounts over and above the wage rate that show up in

8  these papers.

9      We don't have anything like a description of the formula

10 that the employer used to divide up or calculate these -- what

11 I would call add-ons or service charges.

12     We know what the hourly rate paid was.  We know what the

13 plaintiff says the hourly rate that should have been paid was.

14 At least we have the plaintiffs' statement on that.

15     But, we don't have a formula or a method of computing here

16 in chambers how the so-called service charges or tips or

17 bonuses or whatever may have been applied to identify that

18 classification of money, how those -- how those -- what the

19 formula was that arrived at that number.

20     And we don't know, from what's available to the court,

21 whether the entirety of these funds that are sometimes called

22 service charges were turned over to the employees, that is,

23 remitted to the employees, or whether some part of those funds

24 that were not a part of the wage package were, in fact,

25 withheld by the employer.  Some part of dollars received by the

1   employer, were they or were they not withheld?  And if so, why
2   were they withheld?

3        And I will acknowledge to you, counsel, I remain unclear
4   as to what label is to be applied to this fund of money that is
5   a fund of money intended to cover matters other than a direct
6   payment of wages.

7        Whether they are -- everyone's comfortable in calling them
8   service charges, or whether some prefer to call them bonuses,
9   or whether there's some other title that some one of the people
10  involved in the case might prefer to call them.  Whatever that
11  title is, I don't think it's been agreed upon among the various
12  participants.  And I cannot tell you in this call just exactly
13  what is said to be a service charge, as compared to what is
14  said to be a bonus, as what is compared to be something else.

15       And another matter that we do not have available here from
16  my review of the materials, we do not have a clear indication
17  of how the plaintiffs arrived at what the plaintiffs assert to
18  be the should-have-been-paid rate.  The hourly rate that should
19  have been paid to each of these four classes, or four groups of
20  people that were in the -- that are in the putative class.

21       Is that a rate that was derived from contract?  Written
22  contract?  Or verbal contract?  Or is it a rate that was
23  selected because it is something in the nature of an average of
24  what was paid to other people in the employ there at Big Sky?
25  It's unclear to me how that should-have-been-paid rate was

1  arrived at, number one.  And number two, is it based upon what

2  the plaintiffs assert to be contracts that existed between the

3  several persons in the four groups and the employer.

4      I just can't answer that.

5      But what I can say, counsel, is that the large volume of

6  material that's arrived here as of yesterday, is under review

7  and will continue to be under review.  But it has raised not as

8  many questions as it answers, but it leaves, in its present

9  form, the court with the fact of being somewhat uncertain about

10 what some of these numbers were -- where they were -- how they

11 were arrived at, where they come from, and what they were

12 intended to apply to.

13     And I would ask us all to keep in mind that we have not at

14 this point in this transaction, or this case, the court has not

15 made any certification of any class, whether of a class asked

16 for, or some other class.

17     And we've not issued any order that commits the court to

18 any particular class definition, or even to assert or say that

19 the court is prepared to declare a class action.  That's not

20 been done.

21     We have this assumption that there is a settlement of what

22 is supposed to be a class action.  But you don't have the

23 benefit of any rulings of the court to back that up at this

24 point.

25     We have other matters that are known from reading the

1   papers that have been filed, but we don't have any court

2   approval of, for example, the fact that this is to be -- matter

3   is to be settled for a million dollars.  Nor do we have any

4   address or approval of whether the court would agree to a

5   $250,000 fee for counsel.

6       A third item that is sought, but not agreed upon or ruled

7   upon, is the request for a hundred thousand dollars to pay the

8   five class representatives; $20,000 apiece, as I recall the

9   paperwork.

10      We don't have any approval of any particular amount of

11  out-of-pocket costs that would be said to be a component of

12  deductions from the $1 million gross settlement.

13      And I don't have a clear picture, counsel, at this point,

14  of how the parties would anticipate the mechanics of handling

15  the settlement, if there is a settlement, how that's going to

16  be handled.

17      We have some other matters I'll talk about here in a bit,

18  including that if these people receive monies in settlement,

19  I'm talking about not lawyers or -- the class representative

20  settlement, presumably, would be wages or income that will have

21  to be reported.  The monies that the members of the class

22  receive, which will have to be, I think, reported as income.

23  And we don't have any formula yet in place as to how all of

24  those details are going to be handled; how the individual

25  members of the class will ultimately be paid; who is going to

1 be responsible for tax withholdings or other withholdings that
2 may have to be made from those settlements.  How that's going
3 to be dealt with.

4      I assume from what we have read, that the ultimate
5 settlement contemplates something in the nature of dividing up
6 the net amount of money available for distribution to the
7 members of the class or classes and prorating that equally
8 among the 83 persons who make up the group.  I'm not certain
9 that that's what's intended.  But that appears to be what is
10 proposed.  To use an example, we have 83 people in this class,
11 each one of them is going to get one-eighty-third of whatever
12 the fund available to be distributed will turn out to be.

13      That doesn't seem to have any direct relationship to the
14 amount of loss that these persons may legitimately be entitled
15 to claim otherwise.

16      That is, having been paid at a rate that was less than
17 what they should have been paid, or that they expected to be
18 paid, or thought they would be paid, or contracted to be paid.

19      And we -- by our calculation here in chambers, it appear s
20 that there is a substantial amount of money that would be in
21 the common fund over and above the actual wages that weren't
22 paid to these people that, presumably, would be allocated as a
23 compensation to these people for unspecified damages.

24      I have no position or opinion on that as to whether those
25 unspecified amounts would be treated as income, or whether they

1  would be treated as some sort of non-income compensation in the

2  form of damages.

3      All I'm saying to you, counsel, is we've got a lot of

4  unanswered questions here at this point.

5      And kind of a bottom line of where we are today, so that

6  you'll understand the court's position, if we are going to

7  bring this matter to conclusion by settlement, the court is

8  going to have to be satisfied that it is, in the larger sense

9  of things, fair to do so.  And I am not at all convinced, based

10  upon what's been presented to the court, that that concept of

11  fairness pervades as the court might deem it necessary to

12  pervade in order to get this case settled.  We will do what we

13  can within reason to help you get the case settled, if that's

14  what the parties want to do.

15      But we will not undertake that course of action if it is

16  going to sacrifice the legitimate interests of some part of the

17  persons who are expected to receive the money from the

18  settlement.

19      So, that's kind of where we are in my current assessment.

20      I have not reached any conclusion that the court is of the

21  view that these class representatives are entitled to $20,000

22  apiece for their work as class representatives.

23      I'm not saying that it's not justified.  But I'm certainly

24  not prepared at this point to buyoff on the proposition that

25  five of these 83 people ought to collect $20,000 apiece, when

1   the other 70-some odd would collect, obviously, a very

2   substantially smaller amount of money.

3       We have made some preliminary calculations.  Accepting the

4   numbers provided to us that if the payouts were accomplished as

5   requested, that is, to the lawyers' fees and the class

6   representatives and others, the costs, we would have

7   approximately $635,000 to be distributed among the members of

8   the class.  That's over and above what's paid to the class

9   representative, and over and above what would be allocated for

10  attorneys' fees.

11      We have made or attempted to make some calculations of

12  actual wage losses that are within the $635,000 number, and

13  have come up with an approximate figure of $172,000 as wages

14  not paid that the plaintiffs would assert should have been

15  paid.

16      That leaves approximately $460,000 of money that would be

17  available for allocation to the members of the class, which, I

18  presume, would be, at least in theory, to cover service

19  charges, other potential damages that might be recovered by

20  members of the class or individuals within the members --

21  within the class if the cases were to actually go to trial.  It

22  would be kind of a catch-all number that would cover amounts of

23  claims over and above actual wage losses.

24      Our initial assessment, counsel, is that no matter what

25  label you put on it, that these monies to be received are all

1   going to be classified as -- or likely to be classified as

2   income, which means, of course, that the tax collectors are

3   going to want to have their interest in such transactions

4   addressed and taken care of.

5       And I don't read in the papers that have been provided to

6   us as yet, a clear picture of how all of that administrative

7   end of resolving the case would be taken care of and handled.

8       I certainly don't think it's a task to be assigned to the

9   court.  And I, for purposes of our discussion today, just want

10  to alert you to these -- that question, among many others that

11  I've raised in this call, are yet to be addressed, and

12  ultimately, that will have to be resolved if we're going to

13  settle this case, or if we're going to try it.  It doesn't

14  matter.  These issues that we're talking about are issues that

15  are real to the case itself and to the matters that are raised

16  in the case.  And I think it is unlikely that we can sweep any

17  of them under the rug and not address them directly and resolve

18  them.

19      So that's what I have to report to you, counsel.  I

20  welcome any comments that you want to make.  But I will go back

21  to the reality that we are waiting on response briefs that will

22  be coming in here on or before September 18.  And presumably,

23  some of these matters will be addressed in the response briefs.

24  And I would certainly continue to invite counsel to bring to

25  the court's attention and brief any matters that you think are

1   necessary to assist the court in resolving this thing.

2       That is our objective.  Our objective is to help you get

3   this case ready for trial, if you want to try it.  If you want

4   to settle it, then we'll try to help you get it settled,

5   consistent with whatever the parameters are that prevail in

6   every class action or claimed to be class action lawsuit.

7       So that's where we are, counsel.  I wanted you to have the

8   benefit of the court's present thinking on all of this.  And

9   suggest that we all gear ourselves up for what may be a

10  somewhat lengthy trek to get to the end of the process.

11      I welcome your comments.

12          MR. SELIGMAN:  Your Honor, this is David Seligman for

13  plaintiff.

14      So, I'd like to begin by stating that the plaintiffs

15  believe that much of the information that the court is

16  concerned about may be lacking.  It's before the court, but we

17  appreciate that --

18          THE COURT:  Well, let me interrupt you right there,

19  Mr. Seligman.  I don't think it's the job of this court to wade

20  through pages and pages and pages of compilations of data from

21  some statistician and try to figure out what was intended.

22      That's not the job of the court.  If it's there and it's

23  discernible and we can find it with reasonable effort, we'll

24  certainly undertake it.  But I don't intend to assign staff

25  here to spend hours and hours and hours poring over data that

1   the court has already reviewed to some extent and determined to

2   be inadequate to answer the questions.

3        It may be a difference in approach.  And we can attribute

4   it to that if that is the case.  But it will not be the job to

5   be assumed by the court to look through hundreds of pages of

6   data to try to find out what somebody was intending to convey.

7        MR. SELIGMAN:  Of course, Your Honor.

8        And I didn't mean to suggest that.  What I was going to

9   say is that we appreciate that the filings are voluminous.  We

10  think that one thing that could be helpful for the court is for

11  plaintiffs to submit a much more comprehensive declaration from

12  the statistician.  The statistician's declaration at Docket

13  64-8 includes, for example, the amounts of service charges paid

14  to workers outside of the classes, the non-H2B workers, that

15  were used as the amounts that service charges that should have

16  been paid to the class members.

17       But, I think we can update it with a more comprehensive

18  and conclusive declaration from the statistician.  The parties

19  would be able to walk you through precisely how those

20  calculations were made, and what data was relied upon in making

21  those calculations.

22       THE COURT:  I certainly welcome all assistance that

23  counsel want to provide.  We will gladly receive that.  And

24  we'll endeavor to work, we trust, reasonably with it.  But that

25  doesn't translate into handing the court a three-inch stack of

1   papers, and say:  "Judge, have a look.  And when you've figured

2   out what you think ought to happen, come tell us."  That's not

3   the approach we will take.

4          MR. SELIGMAN:  Of course, Your Honor.

5      So I just want wanted to say, you identified the defendant

6   has the opportunity to submit a responsive brief --

7          THE COURT:  And they haven't done anything.  The

8   defendants have not submitted anything of substance to the

9   court, as yet.  Now, they're going to have the opportunity by

10  the 18th of September to respond.  And if we need more briefing

11  after that, we can always order it.

12     But right now, I don't have anything from the defendants

13  except what is characterized as an unopposed motion.  Which one

14  might read as saying everything that's in it is exactly as the

15  defendants would agree it should be interpreted.  I don't

16  choose to do that, because I'm not certain that that's the

17  defendants' position.  And we don't want to be running off

18  without a full knowledge of what's happening.

19         MR. SELIGMAN:  Yes, Your Honor.

20     And so, I just wanted to identify that if the court was

21  open to it, the plaintiffs believe that we can provide briefing

22  and an updated declaration from the statistician that would

23  much more clearly respond to some of the concerns that the

24  court has identified today.

25         THE COURT:  Well, I welcome that, counsel.  I will

1   gladly accept all of the assistance that counsel feel they wish

2   to provide.  Because we have a collective responsibility, and

3   that's to get this case resolved either by settlement or by

4   trial on the merits, in a manner that's consistent with the

5   rules we're all expected to operate under.

6        And that requires, in my view, openness and candor all

7   around.  Which means, from my standpoint, it means input from

8   everyone.  I don't get much from the -- that's helpful to the

9   court when I get nothing from the defendant, except the

10  representation that whatever the plaintiff has said is

11  unopposed.  That may be accurate.  And if that's accurate, then

12  the defendant should say so.  Defendants --

13            MR. ROTH:  Your Honor, if I may, Jeff Roth.

14       Your Honor, we'll -- we will -- pursuant to the court's

15  order, we will submit a brief on or before the 18th that

16  addresses the issues that the court has raised here, as well as

17  in its written order to -- to address any questions -- we hope

18  to address any questions the court may have, and to set forth

19  the defendants' position on the issues that you've asked about.

20            THE COURT:  Well, counsel --

21            MS. ZELDIN:  We will do that, as well.

22            THE COURT:  Yeah.  Go ahead.

23            MS. ZELDIN:  Thank you, Your Honor.

24       I was just stating we will submit a response, as well.

25            THE COURT:  All right.

1          Very good.

2          Well, I make an observation, counsel, which comes from not
3    all of the experience that anyone can have.  But I spent about
4    35 years as a practicing lawyer before I took on the job I have
5    now.  And both sides are faced with monumental tasks if the
6    court were to reach the conclusion that this case cannot be
7    appropriately managed as a class case, and that you're going to
8    have to file 83 different lawsuits to get these controversies
9    resolved.  I haven't reached that conclusion.  But at one
10   level, it appears that there's going to be a request made of
11   the court that all of these people be treated equally for
12   purposes of some distribution.  And that is not the case in
13   terms of their work history.  They are not in equal position
14   one with the other.  They are not one-size-fits-all in terms of
15   the hours they work, or the rates at which they worked, or the
16   jobs they performed.

17         And we'll look at all suggestions that are made to the
18   court about how we handle that.  But I see within the picture,
19   the possibility that we've got 83 people, each with, basically,
20   a different claim from the other 82.

21         And if we're going to be fair about this, we have to be
22   concerned that we don't dump all of these people into a common
23   pot and say:  "We'll just mix them up and roll them out like
24   chitlins."  We're not going to do that, counsel.  At least, I'm
25   not going to cooperate in doing that if there's a better way to

1   avoid it.

2        Because I don't think that's the fair thing to do.  And

3   above all, we ought to be concerned about fairness in the

4   resolution of this case.

5            MR. SELIGMAN:  Your Honor, on that point -- and this

6   is David Seligman for the plaintiffs.  We're very happy to walk

7   you through what we anticipate being the formula for

8   disbursement.

9            THE COURT:  I would welcome that, counsel, because it

10  is missing from what I am looking at to this point, as I have

11  read the papers.  And maybe it's in papers that I haven't yet

12  fully come to understand.  But I expect to know that when we

13  resolve this matter, if it is to be resolved as we're talking

14  about.

15           MR. SELIGMAN:  Yes, Your Honor.

16       It is spelled out in the settlement agreement attached as

17  Exhibit 1 to the brief in support of motion for preliminary

18  approval.  The plaintiffs will, in a supplemental filing, spell

19  out and identify for the court what the distribution plan is

20  and talk to the court how it would operate in this case.

21           THE COURT:  I think that is critical to have that.

22       Well, counsel, I am confident we can work all of this out

23  with the cooperative effort among those who are involved.  But

24  I encourage everyone to keep an open mind about what may be

25  required.  And it may, in some instances, seem to you

1  individually or collectively, that you're being asked to do

2  more than you think you ought to have to do.  You may find

3  yourself faced with that.  But if it's the court's view that

4  it's necessary, I'm likely to require it.

5      MR. SELIGMAN:  Absolutely, Your Honor.  And we

6  appreciate that.

7      But the other thing that we can spell out more explicitly

8  is that the motion before the court is one of issuance of

9  notice under Rule 23(e)(1).

10     THE COURT:  Yes.

11     MR. SELIGMAN:  Although, we do have a plan for

12 disbursement that we can identify for the court.

13     The question of the fairness of the distribution plan is,

14 under Rule 23, to be analyzed, traditionally, under Rule

15 23(e)(2), which is that after notice has been provided, and

16 class members had the opportunity to object or exclude

17 themselves from the class.

18     So, I'm very happy to walk the court through and -- but,

19 in addition, wanted to spell out a little bit more the

20 procedural posture we're currently confronted with.

21     THE COURT:  Well, I'm sure we'll try to follow -- you

22 can count on that we will try to follow all of the requirements

23 of the Rules of Civil Procedure in bringing this matter to

24 conclusion.  That will be done, to the extent that the court

25 can participate in the process to get it done.

1     So . . .

2     But I think, counsel, for today, the most I can tell you

3  is that there are a lot of unanswered questions here.  First

4  step in this process is to get a response from the defendants.

5  And we'll see what comes from that.  And that may answer some

6  of the questions that the court has at this point.

7     It may generate other questions that will require another

8  conference or similar to -- like this one or similar to it.  Or

9  it may require people to travel to Montana, and we'll have a

10 courtroom hearing.

11     We are all faced with the dilemma that's come -- that's

12 been visited upon us because of the corona virus, and we will

13 continue to deal with that until that's lifted.

14     But, in the meantime, we'll do the best we can with what

15 we have to work with.

16     So, I wanted to report to you on these matters.  To leave

17 it where we are, I think, is to await the materials that will

18 come in from the defendant.  We'll take another look and a

19 further look at the papers that have been filed at that point.

20 And we'll see what additional questions can be answered at that

21 juncture.

22     And, if necessary and appropriate, create a list of what

23 is yet to be resolved.  And bit by bit, counsel, we will get

24 this case resolved, if you want it settled.

25     Assuming we can make all the bits and pieces fit into the

1   appropriate mold.

2        Anything else you want to talk about today?

3             MR. SELIGMAN:  Not for plaintiffs, Your Honor.

4             THE COURT:  Any of the defendants?  You've been

5   noticeably silent throughout this process.

6             MR. ROTH:  Your Honor, Jeff Roth.  Nothing here, Your

7   Honor.

8        We will brief it by the 18th.

9             THE COURT:  All right.

10       Well, counsel --

11            MS. ZELDIN:  This is Lauren Zeldin.  (Inaudible).

12            THE COURT:  Well, counsel, I will emphasize to all of

13  you, if it's of any question, this is a court that works on the

14  basis of the record.

15       So, I encourage, if you want the court to take note of

16  some activity, no matter what it is, I would recommend it be on

17  the record, because you won't get anywhere trying to convince

18  the court that you had some private conversation between

19  counsel that resulted in some sort of an arrangement that's not

20  written down.  We won't be doing that.

21       And for your information, counsel, if any lawyer in this

22  case, and this rule applies in every case that is in our court,

23  if any lawyer puts himself or herself in the position of having

24  to be the equivalent of put under oath to enter into a swearing

25  contest with some other lawyer, I will disqualify him or her

1    from the case immediately.  And I'll disqualify everybody in

2    his or her firm.  We will not have lawyers attempting to serve

3    the dual purpose of being witness and advocate in the same

4    case.

5         And that's not a threat, counsel.  It's just a reality of

6    the way this court works.

7         Anything else you want to talk about today?

8         Hearing nothing, we're going to conclude the conference

9    and I look forward to getting the materials that will show up

10   here on or before the 18th.  And we will be in touch as

11   appropriate, counsel.

12        Take care.

13             MR. SELIGMAN:  Thank you, Your Honor.

14             MS. ZELDIN:  Thanks, Your Honor.

15             (The proceedings in this matter were adjourned at

16             2:47 p.m.)

17

18             C E R T I F I C A T E

19

20   **I certify that the foregoing is a correct transcript from**

21   **the record of proceedings in the above-entitled matter.**

22   **/s/ Tina C. Brilz, RPR, FCRR**

23   **Dated this 7th day of September, 2020.**

24

25