1    Kim Marchwick
     Registered Professional Reporter
2    Certified Realtime Reporter
     Federal Certified Realtime Reporter
3    Post Office Box 10447
     Bozeman, Montana 59719
4    (406) 671-2307 cellular
     marchwickkim@gmail.com
5

6
                    IN THE UNITED STATES DISTRICT COURT
7                      FOR THE DISTRICT OF MONTANA
                            BUTTE DIVISION
8                    _____

9    NICHOLAS DOUGLAS, TASHEKA BRYAN,    )
     JUNIOR HARRIS, MARCUS RICHARDS,     )
10   STEPHANEY SMITH, and those          )
     similarly situated,                 )
11                                       )
                       Plaintiffs,       )
12        vs.                            ) Case No: CV 18-62-BU-SEH
                                         ) Status Hearing
13   YELLOWSTONE CLUB OPERATIONS, LLC,   )
     and HOSPITALITY STAFFING           )
14   SOLUTIONS, LLC,                     )
                                         )
15                     Defendants.       )
                     _____
16

17            BEFORE THE HONORABLE SAM E. HADDON
              UNITED STATES DISTRICT COURT JUDGE
18               FOR THE DISTRICT OF MONTANA

19
              Paul G. Hatfield Federal Courthouse
20                    901 Front Street
                   Helena, Montana 59626
21

22               Tuesday, November 10, 2020
                  10:03 a.m. to 11:19 a.m.
23                   _____

24

25

```
 1                            APPEARANCES

 2      For the Plaintiffs:

 3          Mary Jo Lowrey, Esq.
            LOWREY PARADY LEBSACK, LLC
 4          1490 N. Lafayette St., Suite 304
            Denver, Colorado 80218
 5          MaryJo@lowrey-parady.com

 6          Christopher Young, Esq.
            YOUNG LAW OFFICE, PLLC
 7          421 W. Mendenhall Street
            Bozeman, Montana 59715
 8          cyoung@younglawofficepllc.com

 9          David Seligman, Esq.
            TOWARDS JUSTICE
10          1410 High Street, Ste. 300
            Denver, Colorado 80218
11          david@towardsjustice.org

12      For the Defendants:

13          Jeffrey M. Roth, Esq.
            CROWLEY FLECK, PLLP
14          305 South 4th Street East, Ste. 100
            PO Box 7099
15          Missoula, Montana 59807
            jroth@crowleyfleck.com

16
            John Mark Semmens, Esq.
17          CROWLEY FLECK, PLLP
            900 N. Last Chance Gulch, Ste. 200
18          Helena, Montana 59601
            jsemmens@crowleyfleck.com
19
            Roger G. Trim, Esq.
20          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
            2000 S. Colorado Blvd.
21          Tower Three, Suite 900
            Denver, Colorado 80222
22          roger.trim@ogletreedeakins.com

23          Lauren H. Zeldin, Esq.
            OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
24          191 Peachtree St. NE, Suite 4800
            Atlanta, Georgia 30303
25          Lauren.Zeldin@ogletreedeakins.com
```

3

1                                    **INDEX**

2                                                                    PAGE

3     Proceedings                                                    4

4     REPORTER'S CERTIFICATE                                         46

5     Word Indexing                                                  47

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          MORNING SESSION, TUESDAY, NOVEMBER 10, 2020

2          (Whereupon, the court convened at 10:03 a.m., with all

3     interested parties present, and the following proceedings were

4     had:)

5          THE COURT:  Madam Clerk, will you call this matter for us,

6     please.

7          THE CLERK:  This Court will now conduct a status conference

8     in Cause No. CV-18-62-BU-SEH, Douglas versus Yellowstone Club

9     Operations, et al.

10         THE COURT:  Well, Counsel, welcome to Montana, those of you

11    that are from out of state.  I believe we have

12    Mr. David Seligman on behalf of Plaintiff, with others.

13    Mr. Jeffrey Roth is here on behalf of the Defendant Yellowstone

14    Club Operations; Ms. Lauren Zeldin on behalf of Hospitality

15    Services.

16         And we have other counsel who are here who have not

17    identified themselves as intending to have speaking roles, but

18    if you need to address the Court at any time, you're, of course,

19    entitled and welcome to do so.  We'll ask any of those who speak

20    for the first time to introduce themselves so that the record

21    will be clear.

22         For your information, Counsel, as you may know or you may

23    not know, we have in place in this district a wear-mask-in-the-

24    courtroom rule which each individual judge is entitled to set

25    aside if he or she wishes.  That is what we do in this

1      courtroom.  If any participant wishes to remove his or her mask

2      in addressing the Court or in participating in this proceeding

3      you are certainly entitled to do so but that is optional.

4           So that we might keep all of this in some perspective,

5      Counsel, this case has been pending since September 20 of 2018,

6      something over two years.  It has been, in practical terms,

7      limbo since mid-June of 2020 when a noticed of settlement was

8      filed with the Court.

9           A number of deadlines had been established by the Court

10     prior to those most recent developments relating to settlement.

11     Those deadlines have been vacated and for the information of

12     everyone we are essentially, Counsel, at square one in this

13     lawsuit in terms of progress if this case does not stay on track

14     to be settled.

15          We have a large, in the view of the Court, a number of

16     issues that will have to be addressed and resolved if the case

17     is to go forward.  This conference, however, had been set and

18     continued for some time because of coronavirus issues postponed

19     until today's date.

20          I am hopeful that we will be in a position collectively to

21     continue to move the case forward with reasonable dispatch and

22     to do whatever is necessary to get a settlement completed, if

23     that is to be done, or if it is not to be settled to put this

24     case on a meaningful track to get the pretrial matters addressed

25     and resolved and the case ready for trial.

1          So that's the framework, Counsel, and what I propose to do

2    this morning is take up with you first the proposed settlement

3    program that the Plaintiff has put together and filed with the

4    Court.  We have some responses from the Defendants, and we're

5    going to take those up in, I trust, a reasonable sequence, and

6    we'll start with the some basics.

7          And I should say before we start that we're going to be

8    talking this morning, Counsel, about a number of specific dollar

9    amounts that are in one way or another related to the issues in

10   the case of the proposed settlement.  The Court has reviewed

11   these materials in detail, and I suggest that we all be prepared

12   to accept that what you are going to hear from the Court are the

13   best estimates that the Court can provide to you based upon the

14   materials that have been filed.

15         All of these amounts, specific dollar amounts, that we may

16   talk about are subject to necessary final check comparison and

17   verification before any of them might be accepted as final, but

18   I think they are adequate for what we are going to try to

19   accomplish today.

20         And you should also understand that in reciting some of

21   these numbers that we'll be talking about today the Court has

22   assumed the accuracy of the various calculations that have been

23   made by a statistician employed by the Plaintiff.  We have not

24   endeavored to crosscheck that person's calculations and numbers,

25   but for purposes of today's proceeding we assume they are

1    accurate.

2         But with that as the framework let's see if we can get

3    underway.  We have a proposed settlement of this case for the

4    sum of $1 million.  There are to be certain amounts by the

5    proposal deducted from the gross settlement of $1 million

6    starting with an attorneys' fees deduction of $250,000.

7         We are informed that cost items have been incurred to date

8    approximately $6000 in costs by plaintiffs' Counsel and another

9    $8577 in administrative costs that have been incurred for a

10   total of $14,757.

11        It is the Court's understanding and indeed assumption,

12   based upon the materials provided, that those numbers, the

13   administrative costs incurred by administrator or the costs

14   incurred by counsel for the Plaintiff, are likely to change and

15   indeed are likely to increase if the program for settlement of

16   the case goes forward as intended.

17        Am I correct about that?  Anyone disagree with that

18   proposition that we are going to have an expected increase in

19   out-of-pocket costs to be taken into account in resolving this

20   matter?  Anyone disagree with that?

21        MR. SELIGMAN:  Your Honor, if I may?

22        THE COURT:  Yes.  It's customary to stand, Counsel.

23        MR. SELIGMAN:  Apologies, Your Honor.

24        So if you're asking whether -- if increased costs would be

25   incurred, for example, if continuing to litigate the matters

1    related to the approval of the settlement, I think that may be

2    right, but I expect those costs to be very minimal.

3         THE COURT:  Well, whatever they are, I expect the normal

4    course of operations to follow that Counsel are going to come to

5    the Court at some point and say, "Judge, the costs have been

6    gone up and we think they have to be taken into account."  Is

7    there any disagreement about that?

8         MR. SELIGMAN:  No, Your Honor, and that would happen before

9    final approval.

10        THE COURT:  All right.  And do I understand, Counsel, that

11   for purposes of this component of the proceedings any increase

12   in costs is going to be a deduction from the net amount of money

13   available to pay to the members of the class in a settlement?

14        MR. SELIGMAN:  That would be the case, Your Honor, but

15   again I don't anticipate --

16        THE COURT:  Counsel, we're not talking about quantities of

17   dollars; I'm just wanting to be sure that I understand what

18   position of the parties is on where this money is going to come

19   from.

20        MR. SELIGMAN:  Yes, Your Honor.

21        THE COURT:  All right.  Well, to continue on with this, as

22   proposed, the calculations that are made and before the Court as

23   part of the proposal is that there is a total of $171,935 .70 in

24   wages that the members of the punitive class claim they are

25   entitled to receive that have not been paid.

1        And these would be wages that are claimed to be owing to

2    the members of the class group for either regular or overtime

3    work that the Plaintiffs say have not been paid for.  There is a

4    separate item that is figured or calculated at a total dollar

5    amount of $306,118.43 that are characterized in the papers as

6    unpaid service charges.  And those are to be distributed to

7    class members if the case is settled, and it is a class action,

8    according to a formula that has been worked out and proposed to

9    the Court.

10        We have an additional amount to be deducted from the $1

11    million settlement gross which is $100,000 and that is to be

12    allocated to payment of class representative fees at the rate of

13    $20,000 per class representative for five separate class

14    representatives.

15        Taking those numbers into account and making the necessary

16    deductions a net fund using this set of calculations of

17    $157,368.87 would remain after payment of these other items in a

18    common pot or common fund to be distributed to the class members

19    according to the formula calculation that has been proposed.

20        Just to recap that, Counsel, we have a million dollar

21    settlement, a proposal to deduct $250,000 off the top for

22    attorney fees, to deduct an additional $14,557 for costs, and to

23    deduct $100,000 for representative fees, to pay out $171,935.70

24    in unpaid wages that the Plaintiffs assert to be due and not yet

25    paid, and to distribute $306,118.43 to members of the class

1    group as compensation for service charges.

2        With all of those deductions the remaining amount of money

3    available for distribution would be $157,368.87.  As I have

4    said, Counsel, those are numbers that are best calculations the

5    Court can make from the existing paperwork.  They are all

6    subject to final review and verification if necessary to bring

7    the matter to conclusion.

8        The service charge component of this proposal, which is

9    calculated at $306,118.43, is what the Plaintiffs assert to be

10   allocated for that particular component of the settlement and to

11   be paid to the members of the class group as compensation for

12   these, what are said to be, unpaid service charges.

13       That $306,118.43 total has been computed under a formula

14   that has been proposed to the Court, taking each of the four

15   groups that are said to make up the intended class; 6

16   bartenders, 32 housekeepers, 32 cooks, and 30 servers.  That's a

17   total of 90 participants.  The class itself is said to be 83

18   persons however, but some of these persons in the 90 group are

19   represented to have held two different positions.

20       A computation has been made that reaches and totals the

21   306,118.42 by addressing and taking into account the number of

22   hours each group worked; that is the total hours worked by

23   bartenders, which is claimed to be 2,179.58 hours; the

24   housekeepers are said to have worked 17,076 hours, and -- a

25   small percentage; cooks are said to have worked 25,142 hours --

1    almost 143; and servers have worked or said to have worked

2    18,268.22 hours.

3          And a calculation of an hourly rate for service charges for

4    each of these groups has been proposed to the Court.  That

5    hourly rate is $13.12 per hour for bartenders; $1.38 per hour

6    for housekeepers; $1.67 per hour for cooks, and $11.60 per hour

7    for servers.  And from that assumption of hourly rate and the

8    hours worked, the total amount claimed for each group has been

9    computed and added together which reaches the $306,118.42.

10         If we carry that computation through and divide the totals

11   for each group by the number of persons in the group, it works

12   out that bartenders would receive as service charge compensation

13   $4,761.42; housekeepers would receive $1,074.80; cooks would

14   receive $1,310.65; and servers would receive $7,064.84 each.

15         That would be additional compensation to be received by

16   these four groups as proposed for service charges.  And that, as

17   I said, if added up reaches to the penny $306,118.43 that the

18   Plaintiffs assert they are entitled to receive in this

19   settlement for service charges.

20         Now, a question for Counsel:  Am to understand, Counsel,

21   that this service charge payment, whatever it turns out to be,

22   if it's made, will be income to the members of the group?  Is

23   that agreed?

24         MR. SELIGMAN:  Yes, Your Honor.

25         THE COURT:  And are we agreed that that is W-2 class

1    income, wage income?

2    MR. SELIGMAN:  That's right, Your Honor, that's what the

3    settlement agreement calls for.

4    THE COURT:  All right.  And that would be the same for any

5    wages that are paid to these members of the group, any part of

6    the group, for either regular or overtime hours that are

7    asserted not to have been paid for?

8    MR. SELIGMAN:  Yes, Your Honor.

9    THE COURT:  All right.  Now, and within this proposal, we

10    have $157,368.87 that is money that would remain after payment

11    of lawyers' fees and costs and payment of wages and payment of

12    service charges that is otherwise available for distribution.

13    And that, as I understand it, is proposed by the Plaintiff

14    to simply divide that by the number of people in the entire

15    group and to allocate that fund out to each and all of the

16    members of the class or members of the class group, and that

17    turns out, by the calculations the Court has, to be $1,096.01

18    each, correct?

19    MR. SELIGMAN:  Yes, Your Honor.

20    THE COURT:  All right.

21    MR. SELIGMAN:  That amount is, of course, subject to change

22    depending on whether the Court approves subsequent motion for

23    attorney fees.

24    THE COURT:  Well, yes, I understand that; and as I'm

25    calculating these numbers, Counsel, I am assuming for purposes

1    of our discussions that these amounts that have been requested

2    would ultimately be allowed.  We're starting with a million

3    dollar settlement; we're going to allocate -- if this is carried

4    through -- $250,000 for attorneys' fees, an additional amount

5    for attorneys' costs, an additional amount for administrative

6    costs, pay wages that are said to be owing, pay service charges

7    that are said to be owing, pay the class representatives, and

8    distribute the remain $157,367.87 pro rata among the 83 members

9    of the class.

10          MR. SELIGMAN:  Yes, Your Honor.

11          THE COURT:  All right.  Then I think we understand each

12   other.

13          Now, let's pick up from there, Counsel.  It is the reality

14   of this lawsuit that we don't have a class certified at this

15   point.  We don't have a class identified at this point.  But I

16   am being asked to approve a class settlement for a group that is

17   now identified to have 83 persons within it working in four

18   separate occupations for some period of time.

19          And the Plaintiff proposes a class definition as follows:

20   All employees of YCO and HSS who worked at the Yellowstone Club

21   on nonimmigrant visas during the winter of 2017-2018.  That is

22   the proposed class that had been recommended to the Court by

23   Plaintiffs' Counsel.

24          And as I said, we have not yet certified a class of any

25   definition for purposes of this case; and, in fact, Court has

1    not yet certified this to be a class action lawsuit.  Now, it

2    appears to the Court, and I suggest to everyone that's here,

3    that we have a more specific group than what was proposed by the

4    Plaintiff that we are in fact dealing with.

5         It appears, and I accept, that there are now asserted to be

6    83 persons who fit within this group that is to be called a

7    class; that all of these persons, all 83, are citizens of the

8    country of Jamaica; that all of these persons were hired through

9    a common recruiting format; and at that point we have, it

10   appears to the Court, a disagreement about who they worked for.

11        We have paperwork in this file that suggests these persons

12   were to be employees of Yellowstone Club Operations.  It also

13   appears to the Court that they were in fact not paid as

14   employees of Yellowstone Club Operations but were in fact were

15   paid as employees of Hospitality Solutions.  Am I correct about

16   that as to pleadings asserted -- positions asserted in the

17   pleadings?

18        MS. ZELDIN:  Your Honor, Lauren Zeldin for Hospitality

19   Staffing Solutions.  It's our position that the punitive class

20   members were jointly employed by both entities, Your Honor.

21        THE COURT:  You say they are joint employees?

22        MS. ZELDIN:  That they were paid through our payroll that

23   was --

24        THE COURT:  Well, how do -- you explain to me, if you wish,

25   Counsel -- you can do it now or we can do it later, how do you

1    have a joint employee who is paid by one employer and not by the

2    other?

3        MS. ZELDIN:  Your Honor, we were -- our position is that

4    the employees were brought on as employees of Yellowstone Club,

5    and my client was hired to help with recruiting, payroll, and

6    administrative functions.  So we did process their hours and

7    their payroll and paid them, but their day-to-day job duties and

8    direction were supervised by Yellowstone Club.

9        THE COURT:  All right.  Well, let's be specific.  Each one

10   of these persons received a paycheck every week or two weeks,

11   did he or she?

12       MS. ZELDIN:  Yes.

13       THE COURT:  Who wrote the checks?

14       MS. ZELDIN:  They came from Hospitality Staffing Solutions.

15       THE COURT:  And what happens to Yellowstone Club Operations

16   as an employer under that scenario that you described?

17       MS. ZELDIN:  It would be our position, Your Honor, that

18   they were also an employer because they were direct --

19       THE COURT:  But they are not signing paychecks, are they?

20       MS. ZELDIN:  They --

21       THE COURT:  I'm asking, Counsel.

22       MS. ZELDIN:  Oh.  They remitted funds to us to compensate

23   the employees for their hours and we wrote the checks.

24       THE COURT:  I'll try to be more clear, Counsel.  Is there

25   anything of record that suggests that these 83 persons, or

```
 1    whatever the ultimate number turns out to be, were in fact

 2    working for Yellowstone Club Operations?

 3            MS. ZELDIN:  Yes, Your Honor.

 4            THE COURT:  What?

 5            MS. ZELDIN:  The filings that were attached to the

 6    Complaint that were submitted.

 7            THE COURT:  No, I'm not talking about filings attached to

 8    the Complaint, Counsel.  I'm talking about what these people who

 9    are on the job walk up to the payroll person at the end of a

10    week or two weeks and they get a check.  Who wrote the check?

11            MS. ZELDIN:  The checks came from Hospitality Staffing

12    Solutions.

13            THE COURT:  All right.  Is there any record that suggests

14    that Yellowstone Club Operations served as an employer for

15    these people on a day-to-day basis?

16            MS. ZELDIN:  Your Honor, are you asking about pay records

17    or --

18            THE COURT:  I'm asking about anything that would support

19    your position that these people work for Yellowstone Club

20    Operations which is what you have asserted.

21            MS. ZELDIN:  The fact that Yellowstone hires them from

22    Jamaica and represents to the Department of Labor that they were

23    going to employ them for the season as well as the fact that

24    they directed their day-to-day work.

25            THE COURT:  Well, bear with me Counsel, because I frankly
```

1    don't understand how you can say that these people worked for

2    Yellowstone Club Operations when every piece of payroll record

3    that I know exists came from Hospitality Solutions.

4         MS. ZELDIN:  Your Honor, if the case were to proceed there

5    would be evidence and documentation that would show the

6    direction of work on a day-to-day basis work from Yellowstone

7    Club, but the parties have -- that's part of what we are trying

8    to settle, Your Honor, is that we do not wish to continue to

9    pursue that factual dispute.

10        THE COURT:  Well, it will certainly have to be pursued if

11   this case is pursued.  I take it because what you're telling me

12   sounds like we have a fundamental dispute over who these people

13   worked for.

14        MR. ROTH:  That is.

15        THE COURT:  Do I misunderstand your position on that,

16   Counsel?

17        MS. ZELDIN:  I believe there is a dispute -- there is a

18   dispute between the Defendants as to who employed the

19   Plaintiffs; that is correct, Your Honor.

20        THE COURT:  Do we have cross-claims in this lawsuit that

21   are going to sort that out?

22        MS. ZELDIN:  The Defendants have endeavored to settle that

23   dispute, Your Honor.

24        THE COURT:  Well, in all due respect, Counsel, you can do

25   whatever you want to by way of settlement, but I must deal with

1    the record as it exists.

2         MS. ZELDIN:  Yes, Your Honor.

3         THE COURT:  And I think you're telling me that we have

4    payroll records and other paperwork that suggests that these

5    people were employed by Hospitality Solutions, but you really

6    think they were working for Yellowstone Club Operations or at

7    least in part?

8         MS. ZELDIN:  Yes, Your Honor.

9         MR. ROTH:  Your Honor, may I?

10        THE COURT:  Certainly.

11        MR. ROTH:  Thank you, Your Honor.

12        THE COURT:  We are going to have to sort this out at some

13   level or else you're going to have to reach some sort of

14   agreement among yourselves as to how's it's to be handled if

15   this case is litigated.  If you don't settle you can and will be

16   expected to litigate these issues.

17        MS. ZELDIN:  Your Honor, if it's helpful, if I may, before

18   Jeff speaks, we do have a provision in the settlement agreement

19   that the tax liability, the employer's share of the tax

20   liability on the wage settlements, it would be attributed to

21   HSS, but it would come out of the settlement fund so --

22        THE COURT:  I don't think we can resolve that level of

23   detail here today, but I take it to be that we have a dispute

24   unresolved on the record as to who these people work for.  Do

25   you take the position that they work for Yellowstone Club

1      Operations.  We have some records, at least the Court believes

2      we have records, that suggest they work for Hospitality

3      Solutions.  I don't know how here today we can resolve that

4      dispute.

5              MR. ROTH:  Your Honor, if I may?

6              THE COURT:  Yes, go right ahead.

7              MR. ROTH:  We do not have cross-claims existing between the

8      two Defendants.  I think both HSS and YCO recognize that if the

9      case were to proceed and go beyond settlement that we would

10     incur significant risks that both parties would be found under

11     federal law as joint employers.

12             And we think there is a significant -- you know, we contest

13     that, but we think that if the case were to go on through

14     litigation and go to trial, there's a reasonably strong chance

15     that someone, whether it be the Judge or the jury, would find

16     that we're joint employers for the purposes of law.

17             And despite the fact, I mean, as the Court recognizes and

18     Ms. Zeldin has talked about, HSS did cut the paychecks, but on

19     the other hand YCO did recruit these people to a certain extent,

20     and we did oversee their day-to-day work for the Yellowstone

21     Club.

22             And so there is -- there's some gray there, frankly, Your

23     Honor.  And while YCO certainly agrees with the Court's

24     identification of the pay process, we also recognize that if it

25     were to go down the road, and we were not to settle the case,

1 that we would face significant risk of being found as a joint

2 employer.

3   THE COURT:  Mr. Seligman, what is your position on who the

4 employer is?

5   MR. SELIGMAN:  Your Honor, Plaintiffs -- both YCO and HSS,

6 are joint employers; that's certainly what we would be able to

7 establish at trial.

8   THE COURT:  You take the position that this was a joint

9 employment?

10   MR. SELIGMAN:  That's right, Your Honor.

11   THE COURT:  And how in summary fashion do you expect to

12 prove that as distinct from the position that's being asserted

13 by the Defendants?

14   MR. SELIGMAN:  I'm not sure that the facts we would put

15 before the Court are distinct from the facts that have already

16 been discussed, namely day-to-day --

17   THE COURT:  In all due respect, Counsel, that wasn't my

18 question.  How do you intend to prove that Yellowstone Club was

19 an employer of this group of people?  And do you say the same

20 rule applies across the board that every one of these people was

21 both an employee of Yellowstone Club Operations and an employee

22 of Solutions?

23   MR. SELIGMAN:  Yes, Your Honor.  All of the members of the

24 class were recruited by the Yellowstone Club to work in the

25 United States.  For all the members of the class, Yellowstone

1    Club informed the Department of Labor that Yellowstone Club

2    would be the employer.

3         And for all the members of the punitive class, Yellowstone

4    Club supervised their day-to-day employment.  That would be --

5    those would be the allegations that would support our claims for

6    joint employment.  Importantly, that issue does not need to be

7    resolved today.

8         THE COURT:  Well, it may never be resolved if this case

9    settles, and I understand that, Counsel; but I am obliged to

10   approach today's proceedings, and unless and until this case is

11   settled, on the basis that we may have all of this we're talking

12   about fall apart, and we will all be on a conventional track to

13   get this case ready for trial.

14        That is the focus that this court must remain at the fore,

15   and I don't want us to lose track of that.  This court exists as

16   a trial court, not as a means for pressuring people into

17   settlement.  If you want to settle this case and we can work out

18   the details, we'll help you get it done; but you'll not get any

19   pressure from this Court to settle a case that is not ready for

20   settlement on all the components and proposed as it is as a

21   class action.

22        The number of issues to be addressed, of which we are

23   talking about only one, are going to have to be sorted out.  And

24   I don't mean to overemphasize that, Counsel, but we will have to

25   address these issues appropriately.  We can't sweep them under

1    the rug as if it really doesn't matter who these people work

2    for.  All right.  Enough of that.  We will deal with that issue

3    of who these people work for separately, if necessary.

4        Let's go back to the question of the class definition.  The

5    Plaintiffs have proposed, as I said, a class that is to be

6    defined as all employees of Yellowstone Club Operations, YCO and

7    HSS, who work at the Yellowstone Club on nonimmigrant visas

8    during the winter of 2017 and 2018.  That's the Plaintiff's

9    proposed class.

10        MR. ROTH:  Your Honor?

11        THE COURT:  Yes.

12        MR. ROTH:  Sorry, Your Honor.  I think that must have been

13    the original proposed definition under the settlement agreement,

14    the proposed settlement agreement that's attached as Exhibit 1

15    to Document 64, the definition is a little bit different.

16        THE COURT:  All right.  Read it to me as you assert it to

17    now be.

18        MR. ROTH:  Certainly, Your Honor.  It's:  All persons who

19    worked at the Yellowstone Club between October 2017 and May 2018

20    on nonimmigrant H2B visas and who were on the payroll of HSS

21    during that period but excludes any individuals who submit a

22    valid and timely opt-out request in accordance with Subsection

23    5.1 hearing.

24        THE COURT:  And all of that is what you assert to now be

25    the proposed class definition?

1          MR. ROTH:  That's correct, Your Honor; that's on Document

2     64-1, page 4, it's Section 1.5.

3          THE COURT:  Is there anything filed of record other than in

4     this settlement document that redefines the class to the

5     language you have suggested?

6          MR. ROTH:  It may be.  I don't have it right -- I don't

7     have the page open, but it may be defined that way within the

8     body of Document 64.

9          THE COURT:  What about that, Mr. Seligman?

10          MR. SELIGMAN:  Yes, it is, Your Honor.  On page 11 --

11          THE COURT:  It is what?

12          MR. SELIGMAN:  The proposed class definition for purposes

13     of preliminary approval of the class settlement is both

14     contained within the settlement agreement and in the motion for

15     preliminary approval at Document 64, page 11.

16          THE COURT:  Well, that suggests that if we are going to

17     adopt that class definition we are going to have to adopt the

18     settlement, and I don't think it works that way, Counsel.  I

19     think the system contemplates when we get a class defined and

20     then we talk about what to do about resolving the claims of the

21     class.

22          MR. SELIGMAN:  Your Honor, under Federal Rule of Civil

23     Procedure 23(e)(1) the Court would, for the purposes of

24     preliminary approval of a class action settlement the Court can

25     find that it is likely to approve the class --

```
1           THE COURT:  I haven't done that, Counsel.  And I'm just
2      trying to be candid with all of you.  I haven't even made a
3      determination of whether this case can even be a class action,
4      and I have some serious reservations about that component of the
5      picture.  Because it is a reality that we've got 83 people here
6      who worked different hours at different jobs at different rates,
7      and every last one of these people has, if any claim at all, an
8      individual claim for what he or she says he or she is owed.
9           That is a reality of this case and looms large in the mind
10     of the Court as to whether or not this case can or should
11     proceed as a class action.  We may have 83 individual claims by
12     83 different Jamaican citizens each seeking his or her
13     compensation that he or she thinks he or she is entitled to
14     receive.  Do you disagree with that?
15          MR. SELIGMAN:  Your Honor, I do disagree respectfully.
16          You're right that the damages amounts may vary depending on
17     the individual.  We account for that in the proposed plan of
18     allocation.  Importantly, there is no dispute, you know, among
19     the parties for settlement purposes that the punitive class
20     meets the Rule 23 standards --
21          THE COURT:  Well, that's the settlement agreement, perhaps,
22     Counsel.  Let me talk with you about something else.  What is
23     the hourly rate that you claim your clients were entitled to
24     receive as a bartender?
25          MR. SELIGMAN:  Your Honor, the hourly rates for the
```

1      purposes of the allocation, we determined --

2             THE COURT:  No, I'm not asking but allocation for purposes

3      of a settlement.  I assume, Counsel, that you believe that

4      people who were hired as bartenders were hired at an

5      agreed-upon hourly rate.  Do you disagree with that?

6             MR. SELIGMAN:  Yes, Your Honor.

7             THE COURT:  You disagree with that?

8             MR. SELIGMAN:  No, I do not disagree with that.

9             THE COURT:  All right.  What was the rate that you assert

10     bartenders were hired to receive per hour for regular work --

11     regular hourly work performed?

12            MR. SELIGMAN:  I believe the amount that they were paid by

13     HSS, you'll have to bear what me --

14            THE COURT:  I can tell you what they were paid, I've got

15     the numbers.  Bartenders were paid $11 per hour, that's what

16     they were paid on the payroll records.  There is an assertion in

17     this lawsuit that they were to have received $14.11 per hour --

18            MR. SELIGMAN:  Yes, Your Honor.

19            THE COURT:  -- for regular time.  I'm asking you, what is

20     your position?

21            MR. SELIGMAN:  My position is that they should have been

22     paid $14.11.

23            THE COURT:  All right.  Upon what do you base that

24     conclusion?  How do I get to the conclusions that bartenders

25     were to receive by agreement with the employer $14.11 per hour?

1        MR. SELIGMAN:  At trial we would argue that bartenders who

2   are members of the punitive class should have been paid the

3   amount that their comparators outside were paid or --

4        THE COURT:  The amount that what?

5        MR. SELIGMAN:  That comparators outside of the class were

6   paid; on average that amount is $14.11 per hour.

7        THE COURT:  Well, do you assert that the bartenders in this

8   group had an agreement with their employer to be paid 14.11?

9        MR. SELIGMAN:  No, Your Honor.

10        THE COURT:  How am I to assume that 14.11 is the rate they

11   should be paid?  What's the proof of that?

12        MR. SELIGMAN:  That is what comparators outside of the

13   class.

14        THE COURT:  Do we know that comparators, as you call them,

15   entered into the negotiation process when they were selecting

16   people to be hired as bartenders and how much to be paid?

17        MR. SELIGMAN:  Your Honor, this is not a contract dispute

18   it's a dispute under Title VII of the Civil Rights Act.  So the

19   amounts that they should have been paid, we say, are the amounts

20   they would have been paid if they were not part of this

21   protected class.

22        THE COURT:  If they are not part of the protected class.

23        MR. SELIGMAN:  They are not part of the protected class;

24   mainly black Jamaican citizens.

25        THE COURT:  And what about this group of people makes them

1    entitled to receive $14.11 per hour if they are hired as

2    bartenders, because I'm missing that from what has been

3    disclosed to this Court?

4         MR. SELIGMAN:  At trial, Your Honor?

5         THE COURT:  Absolutely.  I'm talking about trial evidence,

6    admissible evidence that goes before the trier of fact.

7         MR. SELIGMAN:  At trial we intend and we would submit

8    substantial evidence about the capabilities of these workers and

9    that they are at least as capable as their comparators.

10         THE COURT:  That may not be a matter of controversy,

11    Counsel, but any employer-employee relationship has to have at

12    bottom some sort of a transaction agreement about what the

13    employee is to be paid.  Or do you disagree with that?

14         MR. SELIGMAN:  I don't disagree with that, Your Honor, but

15    Title VII of the Civil Rights Act cannot -- your rights under

16    Title VII under the Civil Rights Act cannot be waived by

17    contract.

18         THE COURT:  And how would you say there was a waiver?

19         MR. SELIGMAN:  There wasn't; that's my point, Your Honor.

20         The only reason that they were -- Plaintiffs' position is

21    the reason they were paid different amounts is because of an

22    illegal discrimination.  That is our position.  And that's what

23    we'd be prepared to bring before a jury.

24         Now, I understand that is not Defendants' position.  But

25    again under Rule 23(e)(2) right which is not the stage we are at

1    now, that's a subsequent stage, we'd ask the Court to approve

2    the settlement considering the risks on both sides which we

3    agree exist here.  The costs of continuing with the litigation

4    and the that fact in the delay that would follow from proceeding

5    the case for pursuing the case through final judgment.

6         THE COURT:  Well, Counsel, I'm looking at the numbers that

7    have been provided to the Court, and the dollar amounts that the

8    Court had been provided support the following:  That bartenders

9    were paid $11 per hour; that cooks were paid $12 per hour; that

10   housekeeping we are paid $11.02 per hour; and that servers were

11   paid $11 per hour.

12        The contention of the Plaintiff and the contention that is

13   contained in this proposed settlement does not track with that

14   set of numbers just read.  The assertion by the Plaintiff is

15   that the Plaintiff bartenders should have been paid at $14.11

16   per hour; that cooks should have been $16.16 per hour; that

17   housekeepers that should have been paid $13.26 per hour; and

18   that servers should have been paid $11.57 per hour.

19        In Summary that each of these groups was substantially

20   underpaid from what you claim they should have been paid.  Do I

21   misunderstand you?

22        MR. SELIGMAN:  No, Your Honor; that is our contention.

23        THE COURT:  All right.  And do you have a similar spread in

24   overtime?  The overtime rates paid were 16.50, 18, 16.53, and

25   16.50; and you have claimed that overtime rates should have been

1    calculated higher at 21.16, 24.24, 19.88, and 17.36.  Is your

2    position on overtime that you don't have a specific agreement to

3    it these rates, but you think that has to be paid because of

4    your assertive position in the lawsuit?

5         MR. SELIGMAN:  Those are our assertions, yes.

6         THE COURT:  All right.  That's just what I'm trying to find

7    out, Counsel.

8         All right.  Well, let's see if we can talk about some other

9    things.  Within the numbers that have been provided to the Court

10   is a figure of $136,656.24.  That is the total amount paid as

11   bonuses to the 83 to 90 people who are in what is said to be the

12   Plaintiffs' class group.

13        I do not see that any credit has been used or allowed as an

14   offset for that amount of money that was paid to these people as

15   bonuses against the $306,118.43 that has claimed as the service

16   charges; can you explain that?

17        MR. SELIGMAN:  Yes, Your Honor.  There's a dispute about

18   the nature of the bonuses.  It's Plaintiffs' position that the

19   bonuses were a separate payment obligation and should not be

20   used to offset the service charge underpayments --

21        THE COURT:  All right.  So you think that's a separate deal

22   that has no place in this computation of a settlement?

23        MR. SELIGMAN:  That's correct, Your Honor.  In addition,

24   there's allegation in our Complaint that there were deductions

25   improperly taken off of those bonuses, but because there are

1    risks on both sides with respect to those issues, the parties

2    have excluded them from consideration for the purposes of --

3         THE COURT:  Well, I don't think you've excluded it; you've

4    counted, as I read it, you think that you're entitled to whole

5    $306,000 which is the gross amount of service charges that your

6    computation shows.

7         MR. SELIGMAN:  That's right, according to -- we allege that

8    the bonuses were a separate payment obligation.

9         THE COURT:  I understand that.  I understand that.  For

10   purposes of your computation, you don't think that the

11   Defendants should receive any offset as it were for the bonuses

12   paid?

13        MR. SELIGMAN:  That's right, Your Honor.

14        THE COURT:  All right.  Fair enough.  I understand that.

15        Counsel, let's see if we can't be a bit more specific about

16   some aspects of this picture that's before the Court as a

17   proposal.  To be blunt about it, Counsel, I am shocked by the

18   request for $100,000 to be paid for five representatives as

19   class representatives for what has been done in this case.

20        I am not inclined on the basis of what I have before us,

21   and all that has been put into the briefs, to allocate $100,000

22   to five people for what appears to the Court to be minimal work.

23   Now, if that becomes an issue to be addressed and resolved, we

24   can litigate it.

25        And it is a matter of course that is addressed ultimately

1      to the discretion of the Court, and we will look at the record,

2      because that's my job, is to look at the record and find out

3      what was done and who did it and what the reasonable rate of

4      return for that kind of effort ought to be.

5           But I am telling you that I don't have anything before the

6      Court today including all that is said in the briefs that have

7      been filed that warrant $20,000 per person for five persons for

8      accomplishing the settlement that has been proposed to this

9      Court.

10          That is a serious matter and we will not move this case

11     ahead absent resolution of that issue because I'm not going to

12     approve blanket statement a hundred thousand dollars for class

13     representative fees on the basis of the record that's before the

14     Court today.

15          There may be a record to be developed that would entirely

16     justify that or might even justify something more than that, but

17     that's not what we have today.  And you're asking me to address

18     a settlement proposal that comes as a package, and this is a

19     component of it.

20          So I'm suggesting to you, Counsel, if we are going to be

21     capable of bringing this matter to resolution by settlement, it

22     will not be on at basis of everybody simply holding their hard

23     ground, no compromise, no adjustment, no modification.

24     Settlement is by definition just that.  It is a compromise

25     reached.

1        And what I have before the Court is a proposal from the

2    Plaintiff that seeks, as we have outlined earlier, that includes

3    a hundred thousand dollars for representatives' fees and also

4    does not include any offset for bonuses that were received which

5    totaled, according to the Court's calculation $136,656.24.

6        So I think that's sort of where we are, Counsel.  So to

7    bring us back to the specifics, we do not have a defined class.

8    The Court has not declared this case to be a class action

9    lawsuit.  We do not have, it appears, any firm agreement on what

10   the hourly rate at which these people were to be paid either for

11   regular time or overtime.

12       We do not have an agreement about whether or not the

13   bonuses paid should be allowed as an offset against the service

14   charges that are asserted.  And there may be other issues that

15   are present in the mix that I haven't talked about.

16       But let me give you some other numbers to think about,

17   Counsel.  And I've done this because it does appear that this

18   case is one that ought to receive serious consideration for

19   settlement, but that will ultimately be up to you.

20       But let's make some assumptions or hypotheticals; let's

21   start with a million dollar settlement package/pot.  We'll

22   reduce that amount by $250,000 off the top to pay the lawyers.

23   We reduce that million by another $14,577 to pay costs.  We

24   reduce that amount by an additional sum of which for discussion

25   purposes I'll fix at $50,000 to pay class representatives -- not

1      $100,000 but 50,000.

2           And instead of the Plaintiffs seeking or recovering

3      $306,118.43 for service charges that we would reduce that amount

4      by the amount of bonuses paid to bring a net amount for service

5      charges still to be paid, 169,462.19.

6           If we add all those numbers together, that is the million

7      dollars and deduct from that lawyers fees, costs,

8      representatives' fees, unpaid wages, and service charges, that

9      totals up to be $655,974.89.  Of that $655,000, that covers

10     all -- that pays every employee all that he or she is seeking by

11     way of wages, regular and overtime.

12          It pays a portion of what the Plaintiff is seeking as

13     service charges, and it pays $50,000 to the class

14     representatives and that set of computations leaves, for

15     distribution to the class, if it be defined as a class

16     $344,025.11.

17          That is several thousands of dollars in excess of the

18     amount of money available for distribution above payouts as

19     proposed by the plaintiffs.  If you divide that up by 83 persons

20     it figures out to be, by the calculations the Court has made,

21     that each of these employees would receive $4,144.88.

22          Each employee would receive that amount in addition to

23     being paid for all wages that are claimed to be due and a

24     portion of the $169,462.19 in service charges.  That is a net

25     increase in money in the pocket for every member of this class

1    except for the class representatives.

2         That is an alternate suggestion, Counselor, and I propose

3    it to you as simply that; if we're talking settlement here, if

4    we're talking about trying to get this case resolved, then you,

5    in Court's view, might want to consider those alternative

6    numbers.

7         If it's not acceptable to the parties, then we simply don't

8    have a settlement; and if we don't have a settlement, we do what

9    we do in every case, we get the case ready for trial and we take

10   it to trial.

11        MR. SELIGMAN:  Your Honor, if I may, I may not have been

12   following the math here.  It seems like so what you're

13   suggesting there is a reduction in the amounts paid to class

14   representatives?

15        THE COURT:  Absolutely, $50,000 reduction.

16        MR. SELIGMAN:  And that's within Court's discretion so it's

17   not -- that, to be clear, there is no motion before the Court

18   now.

19        THE COURT:  Absolutely -- Counsel, this is a hypothetical,

20   I endeavor to pose it as such.  I'm endeavoring to encourage

21   some dialog that might bring the parties to a point that you

22   can -- if this is your objective -- to get this case resolved

23   without spending hundreds and thousands of dollars on lawyers'

24   fees and costs.

25        There is a value to everyone sitting in this room to bring

1   this case to conclusion by resolution if that can be done.  I've

2   been in this business for something over 50 years, and I don't

3   claim to know all there is to know, but I do know something

4   about the costs of litigation.

5       And you are right at the threshold on all sides of being at

6   the point you're going to start spending a lot of time, effort,

7   and energy on matters related to the litigation process.  You

8   can avoid that if you settle this case now.  You won't avoid it

9   if you drag it out and we start down the path of discovery and

10  motion practices.

11      MR. SELIGMAN:  Absolutely, Your Honor, and that's why the

12  parties have a proposed settlement before you, precisely --

13      THE COURT:  And I understand that and I have been candid

14  with you as I can, Counsel.  I am not prepared to define a class

15  and accept the settlement proposal that the Plaintiffs have laid

16  before the Court.

17      MR. SELIGMAN:  That the parties have jointly laid the

18  proposal.

19      THE COURT:  I understand that, Counsel, but in your

20  comments you seem to ignore that this Court in a class action

21  has a, what the Court views as a different role from what it

22  might have in a customary two-party litigation process.  I have

23  the members of the class group, if it is to be defined as a

24  class, to take into account and to make sure that their

25  interests are protected.

1          MR. SELIGMAN:  Absolutely, Your Honor.  And with respect to

2      that point, just to be clear, and I understand Your Honor's

3      point to awards to class representatives, but with respect to

4      the Court's critical role here, which we absolutely respect and

5      appreciate and appreciate how seriously you're taking that role,

6      which it is to ensure fairness for the absent class members.

7          As I understand it there is no dispute among the parties

8      that the amounts distributed to the class members, even less

9      attorney fees, even less amounts potentially paid to class

10     representatives exceeds the pecuniary damages in this case.

11     Everyone agrees about that and it seems that Your Honor agrees

12     about that as well.

13         THE COURT:  Well, we've got by one calculation

14     we've got over $300,000 that exceeds all the monies that

15     anybody's parted with or is entitled to receive.

16         MR. SELIGMAN:  Your Honor, the amount, of course Plaintiffs

17     also assert that they are entitled to emotional distress

18     damages --

19         THE COURT:  I understand all of those, Counsel.  I don't

20     disagree with you about your contentions, but contentions are

21     one thing.  Settlement of the case is an entirely different

22     creature.  And, Counsel, I don't want to be troubling anyone

23     with unnecessary expenditure of time.

24         You have put before this Court a proposal from the

25     Plaintiff.  The Court has made hypothetically a suggestion as to

1    an alternate approach with some adjustments in the numbers.  If

2    the parties don't want that, all you need to do is tell me that

3    and we will shut this process of settlement down, and we will

4    get this case ready for trial.

5         That's my alternative.  You will not hear me time and time

6    again coming back and saying, "How are you working toward

7    settlement?"  I don't do that.  It's not -- in my view, it's not

8    the role of the job of the Court.  If you want to settle it, you

9    make a proposal.

10        If the Court thinks that proposal won't worth, the Court

11   can suggest, which is all I've done, some alternatives.  If you

12   don't like the alternatives, you're entitled to say, "We don't

13   like them.  We don't want them.  We won't accept them."  That

14   switches the game plan over to get the case ready for trial, and

15   that's my job; fundamentally, that's my job.

16        MR. SELIGMAN:  Your Honor, to clarify something, I

17   understood your point about payments to class representatives.

18   The other suggestions, did that include a decrease in the amount

19   of the gross settlement?

20        THE COURT:  No, absolutely not.  I'm not suggesting

21   anything like that, Counsel.  I'm not suggesting that the gross

22   amount be reduced from $1 million.  I'm not suggested there be

23   one penny ducked from the $250,000 that the lawyers want to

24   fees.  I'm not suggesting that anything other than a

25   reimbursement for cost expended be undertaken.

1          I am suggesting as a part of an alternative proposal,

2     hypothetically, that this representatives' fee is grossly

3     overstated as it was presented to the Court; that it should be

4     reduced by at least 50 percent, and I am suggesting that in the

5     interest of fairness of representation of the parties, the

6     litigants, the people in the group that we're calling a class --

7     that what the Court has proposed ups the money available to them

8     by twice what the Plaintiff proposed.

9          MR. SELIGMAN:  Okay.  I understand, Your Honor.  We'd be

10    happy to -- I believe we took note of your proposal, which is a

11    proposal for allocation.  And we'd be very happy if the Court

12    deems it appropriate to discuss internally --

13         THE COURT:  Of course.

14         MR. SELIGMAN:  -- but I suspect --

15         THE COURT:  Absolutely.  In fact, I am prepared to make

16    some suggestions to you on that, and I leave this topic at this

17    point, Counsel.  If you want to settle this case, in my humble

18    opinion, you have the numbers before you, and you have the skill

19    and acumen of counsel capable of getting it resolved.

20         If you don't want to settle it, if your representation

21    roles, if you don't think you're doing the right thing by the

22    people you represent to settle this case on some basis, perhaps

23    as suggested by the Court, that's your decision.  We'll live

24    with it.  That's my job; my job is not to force you to

25    settlement.

1        My job is to be here to try the case for you if it is to go

2    to trial.  I took that oath 20 years ago, I intend to stay with

3    it.  I am not one of these judges who looks forward to forcing

4    counsel to settle cases.

5        MS. ZELDIN:  Your Honor, if I may?  I wanted to correct for

6    the record and just make sure that it is clear when we were

7    talking earlier about costs, this settlement that the parties

8    have proposed to you today, which we understand will be perhaps

9    revised in allocation, provides for the employer tax liability

10    to come out of the settlement fund.  So I just wanted to make

11    sure that Your Honor's numbers may change.

12        THE COURT:  That's a detail, Counsel, you're going to have

13    to work that out.

14        MS. ZELDIN:  Thank you.  I just want to make that clear.

15        THE COURT:  To put a finer point on that, Counsel, if you

16    agree upon numbers you're going to get an additional settlement

17    from this Court, and that is for you to go away and work out the

18    details for how it's to be accomplished.

19        Don't expect this Court to handhold you through the process

20    of dividing up the dollars and cents of a million dollars that's

21    to go to somewhere.  That's your job.  But you're entirely

22    capable of doing that, and I have no doubt about it.  When the

23    numbers have been crunched appropriately and they are compiled

24    and presented to the Court, we can get the job done.

25        That is, in my view, a manageable assignment, but I don't

1    intend to offer the services of this Court or assume the

2    services of this Court to handhold you through all of the detail

3    of working out the details of the settlement.

4         MR. ROTH:  Your Honor, if I may?

5         THE COURT:  Sure.

6         MR. ROTH:  If the parties -- obviously you have given us

7    some suggestion regarding the allocations, and let's just set

8    that aside for a moment.  If that weren't an issue, I just want

9    to make sure we understand what other information the Court

10   needs from us to get through with the settlement.

11        And I understand you have questions about the class

12   definition, so if we handle the allocation and we take your

13   suggestion, and we come up with the appropriate class definition

14   that the Court approves, is there anything else that the Court

15   needs from us?

16        THE COURT:  Counsel, I think there are -- there were.  Put

17   it this ways in the mind of the Court if we approach this matter

18   today, one was the class definition.  One and separate was the

19   amount of money to be paid to class representatives, and the

20   third was what it is to do with this $136,000 that was paid as

21   bonuses.

22        Those were three significant components, and in the mind of

23   the Court, were matters that needed to be addressed if this case

24   was going to get resolved by settlement.  If you get those

25   numbers worked out and everybody has agreed as to the numbers,

1       then I think these other issues related to class definition and

2       how the money's to be allocated and paid, and on the point of

3       payment, I have assumed, Counsel, that all of the money that's

4       going to be paid out to members of this class, if we call it a

5       class, are going to be paid out as wages.

6           I don't see in this picture anyone proposing to me that

7       some part of this fund money that would ultimately wind up in

8       the hands of the members of the group would be considered

9       something in the nature of damages that aren't treated as

10      income.

11          MR. SELIGMAN:  Your Honor, all of it would be damages

12      treated as income.

13          THE COURT:  All right.

14          MR. SELIGMAN:  But some of it be treated as wages.

15          THE COURT:  That's all I need to know.

16          MR. SELIGMAN:  Yeah.

17          THE COURT:  Somebody -- you people, among your group, is

18      going to have to decide how do you divide that up if a person

19      who is a member of the group is going to get a check -- pick a

20      number, 5,000 -- he's going to have a gross number of $5,000.

21      He's not going to receive a check for $5,000, obviously.

22          There's going to be money taken out of that to pay the

23      government, pay the state, pay other tax entities that may be

24      involved, each employee is going to get a net amount check.  I

25      expect all of that to be worked out.

1          MR. SELIGMAN:  Your Honor, that is worked out in the

2     settlement agreement.

3          THE COURT:  I understand that.  But the settlement

4     agreement, Counsel, and I don't purport to say that I could

5     regurgitate to you all the details of the settlement agreement,

6     but some components of the settlement agreement that you have

7     worked out, if the proposal suggested by the Court is ultimately

8     accepted, some of those are going to have to be changed anyway.

9          What I'm going to need to look at is a package that you are

10    all, on both sides, agreed to and that I can look at and make a

11    determination in good conscious that this is the right thing to

12    do to resolve the case.

13         MR. SELIGMAN:  Your Honor, if I may suggest, I think that I

14    want to look a little bit more at your suggested figures.  But

15    the parties here have come to a settlement agreement, we've

16    worked well together, I see no reason why we couldn't resolve

17    these issues now today.

18         And I would, because we are still of this early stage in

19    the settlement process, again this is the preliminary approval

20    for purposes of distributing notice.  I think that we have an

21    interest of getting notice out as promptly as possible, and I

22    suggest that -- if the Court is open to it -- that the parties

23    take a -- we can take a recess now.

24         THE COURT:  No.  That'll answer that, Counsel.  I have

25    other assignments that I must take care of later today.  I'm

1    prepared to take whatever time we need for this hearing, and I

2    would expect that if we are talking about something in the

3    nature of a settlement that's going to resolve the interest of

4    every one of these people that someone needs to assume the

5    responsibility of communicating with the clients about whether

6    or not what lawyers are negotiating in the courtroom is

7    acceptable to the clients.

8         I've never, in my experience, which is not complete,

9    certainly for everyone, but I can't imagine lawyers attempting

10   to settle a case out without talking with the client or at least

11   representatives of the client group to make sure that it's

12   acceptable.

13        MR. SELIGMAN:  To that point, Your Honor, you know, it's

14   certainly Plaintiffs' perspective while the class

15   representatives understand that there is a proposal before the

16   Court to seek $100,000 in payments to class representatives,

17   they also understand that that amount is entirely within the

18   discretion of the Court.

19        THE COURT:  Well, Counsel, here's the best I can do.  I'm

20   going to give you some time, and I'm not going to put a deadline

21   on it that's in the view of the Court unrealistic, but I will

22   give you as lawyers until Friday, December 4th, close of

23   business, Montana time, 4:45 p.m. on December 4th, to look at

24   this suggested resolution that the Court has put to you, make a

25   decision about it and notify the Court, yes or no.

1   If it's yes, then you will receive an additional assignment

2  from the Court to undertake whatever you have to do to bring the

3  components of the settlement to fruition and get it done.  If

4  you don't choose to accept the proposal, and there's no

5  reasonable way to get the case resolved within the framework of

6  what we talked about, then you can say that, and you can go to

7  work on alternate tasks which will be to get the case ready for

8  trial in the view of the Court.

9   And we will take up one by one these issues that we've

10  talked about here today:  Is it to be a class action?  If it is

11  to be a class action, what is the definition of the class?  And

12  what do we do about this issue of who is the employer?  That is

13  not resolved.  What are we to do about the question of how much

14  per hour were these people to get paid?

15   Those are all, in the view of the Court, serious questions

16  that would have to be resolved if the case is to be litigated.

17  And I don't wish to make the task any larger for any of us than

18  is necessary, but we will do what is necessary to put this case

19  together properly and try it appropriately, if that's the route

20  that we follow.

21   But I encourage you to negotiate it as you see fit, and you

22  have until December 4th to give me an answer.  I think that's as

23  far as we can go today, Counsel.  I encourage you in your work,

24  there is nothing that matches up, in my view, lawyers who are

25  capable of doing their job.  It is the essence of our

1    profession, and I commend you to that task.

2        And if we don't resolve it by settlement then overstate the

3    issue that we're here to try the case, that's what we do.  Okay.

4    All right.

5        MS. ZELDIN:  Thank you.

6        THE COURT:  All right.  You have until December the 4th to

7    let the Court know.  And in the meantime, we will await your

8    communication to the Court.  Thank you, all.

9        (Whereupon, the proceedings concluded at 11:19 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **REPORTER'S CERTIFICATE**

2              I, Kim Marchwick, one of the duly-appointed,

3    qualified, and certified acting Court Reporters in and for the

4    State of Montana, do hereby certify that the foregoing 45 pages

5    were reduced to typewritten form using Computer Aided

6    Transcription and constitute a full, true, and correct

7    transcription of my stenographic notes transcribed to the best

8    of my ability.

9              Signed this 16th day of November, 2020.

10

11

12

13

14                              */s/ Kim Marchwick 11/19/2020*
                                _____
15                              Kim Marchwick, RPR, CRR
                                Registered Professional Reporter
16                              Federal Certified Realtime Reporter
                                Certified Realtime Reporter
17                              Post Office Box 10447
                                Bozeman, Montana 59718-0447
18                              (406) 577-2862 office
                                (406) 671-2307 cellular
19                              marchwickkim@gmail.com

20

21

22

23

24

25